UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURDEEP SINGH,<br><br>    Petitioner,<br><br>  v.<br><br>DAVID SEPULVEDA, et al.,<br><br>    Respondents.<br>_____ / | No. C 08-00881 MHP<br><br>**OPINION**<br><br>**Re: Petition for Writ of Habeas Corpus** |

On February 8, 2008 petitioner Gurdeep Singh filed a petition for a writ of habeas corpus alleging that he was being unlawfully detained pursuant to 8 U.S.C. sections 1225 and 1226(c). Respondents (also referred to as the "government") answered and petitioner filed a traverse. A hearing was held before this court on April 28, 2008. The parties were asked for further briefing, which they duly submitted, and a second hearing was held on May 27, 2008. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

Petitioner Gurdeep Singh, a citizen of India, has been a lawful permanent resident ("LPR") of the United States since 1994.

In June 2003, petitioner pled *nolo contendere* to a violation of California Penal Code section 288a(b)(1) (oral copulation with a minor) and a felony violation of sections 236 and 237 (false

1  imprisonment).[1] Petition, Exh. 2. A probation report submitted to the state court judge noted the

2  following: 1) petitioner had a prior misdemeanor conviction for assault in 2000, when he was a

3  juvenile; 2) the victim of the current crime was sixteen at the time of the offense and stated that

4  petitioner threatened to tie her up and rape her friend if she did not perform oral sex on him;

5  3) petitioner allegedly pointed a gun at his victim.[2] Deiss Dec., Exh. 1. Petitioner was sentenced to

6  360 days in prison, five years of formal probation and two years in a sex offender treatment

7  program.

8        In February 2007 petitioner applied for and was granted advanced parole to travel outside the

9  United States. Petitioner traveled to India to get married. Upon his return, a passport scan revealed

10 petitioner's prior criminal history. Id., Exh. 2. Petitioner was paroled into the United States, but

11 was ordered to report to the Department of Homeland Security ("DHS") in San Francisco. On

12 March 20, 2007 Singh reported as requested. At that time, his parole was revoked and he was taken

13 into custody. The same day, the DHS commenced removal proceedings against Singh and issued a

14 Notice to Appear ("NTA"), which claimed that Singh was inadmissible because he was an arriving

15 alien who had been convicted of a crime of moral turpitude. See Immigration and Nationality Act

16 ("INA") § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I).

17       On April 2, 2007 Singh appeared before an Immigration Judge ("IJ") and denied DHS' claim

18 of inadmissibility. On May 20, 2007 the IJ agreed with Singh by finding that Singh had not been

19 convicted of a crime of moral turpitude. He then terminated Singh's removal proceedings. The

20 DHS appealed to the Board of Immigration Appeals ("BIA"). Meanwhile, on June 18, 2007, in a

21 written order of denial of petitioner's request to be released, an Immigration and Customs

22 Enforcement ("ICE") official stated, in a handwritten note on the typed order, that "[s]ubject poses a

23 danger to community - sex offense included violence." Deiss Dec., Exh. 3. Two days later, on June

24 20, 2007, the IJ ordered Singh be released on $1,500 bond. The same day, the DHS asked the BIA

25 to stay the IJ's order granting bond. The BIA did so a few days later, on June 26, 2007.

26       On September 12, 2007 the BIA reversed the IJ's grant of bond by finding that the IJ was

27 without jurisdiction to redetermine the custody status of arriving aliens in removal proceedings. The

28 next day, the BIA reversed the IJ on the merits, finding that Singh's conviction for false

2

1 imprisonment was a crime involving moral turpitude. The BIA did not address the oral copulation
2 with a minor charge. A week later, in an unrelated case, the Ninth Circuit clarified, *en banc*, the
3 standard to be employed when determining whether a crime involves moral turpitude. See Navarro-
4 Lopez v. Gonzales, 503 F.3d 1063, 1074–75 (9th Cir. 2007). In light of this decision, Singh moved
5 the BIA to reconsider its decision rendered the week prior. On November 14, 2007 the BIA denied
6 petitioner's motion.

7 On January 9, 2008 petitioner appeared before the IJ and requested an opportunity to apply
8 for cancellation of removal under INA section 240A(a). See 8 U.S.C. § 1229b. On February 1,
9 2008 Singh filed an application for cancellation of removal and was scheduled for a hearing on
10 March 11, 2008. It appears that this cancellation hearing never occurred.

11 On March 15, 2008 ICE amended the NTA, stating that it no longer found petitioner
12 inadmissable, but rather removable under INA section 237(a)(2)(A)(iii) due to his conviction of oral
13 copulation with a minor—a crime that constitutes sexual abuse of a minor under 8 U.S.C. section
14 1101(a)(43)(A), an aggravated felony. See id. § 1227(a)(2)(A)(iii). An alien considered removable
15 due to conviction of an aggravated felony is subject to mandatory detention *and* is ineligible to apply
16 for cancellation of removal. See id. §§ 1226(c)(1), 1229b.

17 On March 24, 2008 petitioner moved in immigration court for a custody redetermination, or
18 Joseph hearing, before an IJ. See In re Joseph, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).
19 On April 21, 2008 petitioner appeared before an IJ. The IJ did not conduct a Joseph hearing, but
20 found California Penal Code section 288a(b)(1), defining oral copulation with a minor, to be
21 categorically a crime of sexual abuse of a minor, and therefore an aggravated felony. See Coppin
22 Dec., ¶ 2. Consequently, he ordered petitioner removed and pretermitted petitioner's application for
23 cancellation. The IJ did not rule on the custody redetermination request and has not yet issued a
24 reasoned decision with respect to the removal order.

25 Petitioner was taken into custody on March 20, 2007 and has been detained continuously
26 since then. Although the IJ ordered petitioner removed, the question of whether oral copulation with
27 a minor is an aggravated felony is still an open question in the Ninth Circuit. Petitioner now
28 petitions this court for a writ of habeas corpus.

3

DISCUSSION

I.    Jurisdiction

This court has the power to grant writs of habeas corpus. See 28 U.S.C. § 2241. The REAL ID Act of 2005 restricts this court's jurisdiction with respect to certain immigration matters. Petitioner claims this court has jurisdiction to decide this case since the "jurisdiction stripping provision [of the REAL ID Act of 2005] does not apply to federal habeas corpus petitions that do not involve final orders of removal." Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir. 2006). Respondents do not seem to argue with this standard, stating that the REAL ID Act does "not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the [REAL ID Act] eliminate[s] habeas review only over challenges to removal orders." H.R. Rep. No. 109-72 (2005), reprinted in 2005 U.S.C.C.A.N. 240, 300. Consequently, the court does have jurisdiction; however, the court's review is confined to federal constitutional issues. Specifically, the court is without jurisdiction to decide whether oral copulation with a minor is, in fact, an aggravated felony. Thus, the only matter before this court is whether petitioner's ongoing detention during his removal proceedings is lawful.

The allegation that petitioner committed an aggravated felony requires ICE and DHS to detain petitioner under the mandatory detention provisions of the INA. See 8 U.S.C. § 1226(c)(1)(B). Respondents argue that before ruling on the merits, this court should require administrative exhaustion as a matter of prudence. However, the government does not specify what administrative avenues have yet to be traversed by petitioner. Furthermore, there seems to be no rationale for requiring exhaustion with respect to petitioner's constitutional arguments. Indeed, there is no avenue nor requirement for exhaustion regarding the constitutional arguments made here.

II.    Due Process

The issues before the court do not concern the merits of the IJ's removal order, but concern constitutional due process issues raised by petitioner's civil detention. Petitioner makes three arguments. First, that his lengthy detention itself violates due process guarantees; second, that the burden shifting set forth in Joseph is constitutionally impermissible; and third, that he is not subject

4

1  to mandatory detention because he was not detained immediately upon release from criminal
2  custody. Due to the court's disposition of the first argument, it does not reach petitioner's second
3  and third arguments.

4  Petitioner contends that his prolonged and indefinite detention is not authorized by the
5  mandatory detention statute and violates due process protections. In Nadarajah, the Ninth Circuit
6  held that indefinite detention is not authorized for an alien seeking asylum. 443 F.3d 1069. There,
7  after the Immigration and Naturalization Service found the alien eligible for parole on $20,000 bond,
8  both an IJ and the BIA ordered a grant of asylum. The government appealed this decision to the
9  Attorney General and it was unclear when the Attorney General would issue a decision. Five years
10 had passed since the alien had first sought asylum, and the Ninth Circuit held that the alien could not
11 be detained until such time as the Attorney General adjudicated the alien's asylum petition. The
12 Nadarajah court found that a six month period of detention was presumptively reasonable. It went
13 on to state that detention is permitted only while removal may be accomplished in the reasonably
14 foreseeable future. Id. at 1078. To this end, the court found that petitioner should be released
15 because he "ha[d] established that there is no significant likelihood of his removal in the reasonably
16 foreseeable future." Id. at 1081. Nadarajah, however, discusses detention under INA section
17 235(b)(2)(A), which applies to aliens seeking asylum. See 8 U.S.C. § 1225(b)(2)(A). It does not
18 speak to the relevant statute here, 8 U.S.C. section 1226(c)(1)(B), which applies to the mandatory
19 detention of aliens considered removable due to their commission of an aggravated felony.
20 Nevertheless, it is instructive.

21 The government attempts to distinguish Nadarajah on the facts, arguing that unlike petitioner
22 there, Singh is a violent criminal who has not been granted parole on bond and who has been
23 ordered removed. These factual distinctions do not change the circumstances of petitioner's
24 detention. Just as in Nadarajah, petitioner has been in civil confinement for over a year and in light
25 of the appeals process, his actual removal is not reasonably foreseeable. The IJ's decision ordering
26 petitioner removed does not distinguish this case from Nadarajah because there remain open serious
27 legal questions regarding whether oral copulation with a minor is categorically an aggravated felony.
28 This is underscored by Estrada-Espinosa v. Gonzales, 498 F.3d 933 (9th Cir. 2007), where a Ninth

5

Circuit panel held that an alien's prior conviction for statutory rape was an aggravated felony for purposes of removal proceedings and which the Ninth Circuit agreed to review *en banc* a mere three weeks ago. If the decision is reversed, then it is unlikely that oral copulation with a minor will be considered an aggravated felony. Conversely, in light of the Ninth Circuit's decision to review Estrada-Espinosa, even if it were to be affirmed, whether that divided court will consider oral copulation with a minor to be an aggravated felony remains unclear. Further, after a review of comparable federal and state criminal statutes, the court finds this issue to be a legitimate open question in this Circuit. Consequently, the notion that petitioner ought to be detained because he is presumed deportable is questionable. Finally, it is not the fact that actual removal would likely never have occurred in Nadarajah that is of consequence, rather it is the court's holding with respect to the anticipated or actual length of confinement at the time of its decision. Thus, this court focuses on the length of civil confinement in light of constitutional protections.

Petitioner urges this court to adopt language from the Sixth Circuit which states that

> [a]n alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003). In effect, petitioner asks this court to find that any detention beyond six months is prima facie unreasonable unless the government can rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future.

This court agrees with the Sixth Circuit. However, the court declines to adopt a bright-line time period. Each case will present its own unique factors including hearing schedules, promptness of agency action and possible dilatory conduct by petitioners.[3] Therefore, this court holds that ICE may detain *prima facie* removable aliens, such as those alleged to have committed an aggravated felony, for a reasonable amount of time to complete removal proceedings. However, it may not detain aliens for an unreasonable amount of time even if it takes an unreasonably long time to complete the proceedings. In order to determine reasonableness, the court must evaluate, in

6

1  accordance with Nadarajah, whether there is *any* significant likelihood of petitioner's removal in the
2  reasonably foreseeable future.
3       Here, Singh has been in detention since March 2007. He was first found removable on
4  September 13, 2007; however, adjudication of the claim that he had committed an aggravated felony
5  was not at issue until the government's unilateral decision to amend the NTA many months later.
6  He was not ordered removed on this updated claim until April 21, 2008.[4] Petitioner has appealed the
7  decision of the IJ to the BIA and if the BIA's decision is not in his favor, he intends to appeal the
8  BIA's decision to the Ninth Circuit. Without intervention from this court, petitioner will be held in
9  civil custody until at least the conclusion of his Ninth Circuit appeal—an event that could take years.
10 Further, the court finds it compelling that Singh already has spent more time in civil confinement
11 than he did in criminal incarceration when he was sentenced for the underlying felony.
12 Consequently, this court finds that Singh must be released due the lack of a significant likelihood of
13 his removal in the reasonably foreseeable future and because he has already been detained for over
14 one year—much of it due to the government's decision to change positions one year after taking
15 Singh into custody.
16      Allegations of due process violations under these circumstances are analyzed on a case-by-
17 case basis. Nevertheless, this court is not without guidance. The Supreme Court has laid out a
18 formula for this analysis "for the sake of uniform administration in the federal courts." Zadvydas v.
19 Davis, 533 U.S. 678, 701 (2001). Finding a six-month period to be the outer limit of a
20 presumptively reasonable detention, the Court instructed that after this period, "once the alien
21 provides good reason to believe that there is no significant likelihood of removal in the reasonably
22 foreseeable future, the Government must respond with evidence sufficient to rebut that showing."
23 Id. The outer limit of any detention is when "it has been determined that there is no significant
24 likelihood of removal in the reasonably foreseeable future." Id. In a subsequent case, Demore v.
25 Kim, 538 U.S. 510 (2003), the Supreme Court held that the mandatory detention of deportable aliens
26 pending deportation was not unconstitutional. The Court stressed that such detentions were usually
27 relatively brief, but did not discuss a particular time limit. Id. at 529. Consequently, this court's
28 decision is both supported by and consistent with Zadvydas and Demore.

7

1    Once a due process violation based on length of confinement is found, release is mandated
2 by due process considerations and it is generally not appropriate for this court to determine whether
3 petitioner is a danger to society or a flight risk. Zadvydas, 533 U.S. at 690 (noting that "preventing
4 flight" is a weak justification or "nonexistent where removal seems a remote possibility" and that
5 "protecting the community" must be justified by "some other special circumstance such as mental
6 illness"). This court concludes that remand to an IJ for a bond hearing, therefore, is unnecessary.
7 See Nadarajah, 443 F.3d at 1084. However, if the court were to reach this issue, the court finds that
8 neither prong is met. The government concedes that petitioner is not a flight risk. Further, the court
9 does not find petitioner to be a danger to society since he was only sentenced to a term
10 commensurate with a misdemeanor charge and has, to this date, fulfilled the obligations of his five
11 year probation without incident.[5]

12    Furthermore, in Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), this Circuit held that
13 detention for two years and eight months exceeded the authority covered by the mandatory detention
14 statute, section 1226(c). Tijani implicated a lawfully admitted resident alien who was subject to
15 removal, wherein the court held that the same provision as the one at issue here—section
16 1226(c)—applies only to "expeditious" removal proceedings. Id. at 1242. This action is
17 indistinguishable. Singh is a LPR that is subject to removal for the commission of an aggravated
18 felony. Although the IJ has ordered Singh removed, he still possesses numerous avenues for appeal.
19 Just as in Tijani, Singh's order of removal is not yet final. Simply stated, Singh "remains in
20 mandatory detention while courts continue to sort out whether his offenses actually fall within the
21 reach of the mandatory detention statute." Id. at 1244 (Tashima, J., concurring). Furthermore,
22 although Singh has not been detained for the same period of time as in Tijani *yet*, this court predicts
23 that he will have been detained for that long by the time he exhausts his appellate avenues. In light
24 of Tijani, this court holds that detention for over a year with no end in sight for at least another year
25 also exceeds the authority conferred upon the government by the mandatory detention statute.

26    This standard takes into account the varying and competing interests at stake. On the one
27 hand, it allows the government to detain individuals who, in the government's view, have committed
28 aggravated felonies. On the other hand, it creates incentives for the government to resolve the issue

8

1  within a reasonable period so that the individual detainee's liberty interest is not unduly impinged
2  upon. This court is bound by the Supreme Court's view that a "strong special justification" is
3  required for continued detention. See Zadvydas, 533 U.S. at 690. It finds that this strong special
4  justification must be more than a generalized threat to the community. Id.; see also Ly, 351 F.3d at
5  267. The court is aware that individuals under ICE detention have, in almost all cases, *already*
6  served the sentence imposed upon them by the criminal court for their underlying conviction.
7  Consequently, whatever threat to the community existed was dissipated upon the completion of
8  petitioner's criminal sentence.

9       There is an argument to be made that this holding may eviscerate the purpose of the
10 mandatory detention statute. Not so. The government does not argue that the mandatory detention
11 statute allows for *indefinite* detention. Indeed, this avenue has been foreclosed by the Supreme
12 Court. See Zadvydas, 533 U.S. 678. Consequently, there must be some limits on the length of the
13 mandatory detention that is constitutionally permissible under the due process clause of the Fifth
14 Amendment. The standard allows the government to detain removable aliens for a reasonable period
15 of time. However, petitioners should not and cannot be held in civil custody due to the delay
16 inherent in the administrative and judicial levels of review.[6] The proper focus is upon the detention
17 faced by the petitioner and whether the same is a due process violation, not whether petitioner is
18 likely to succeed in his appeals. A contrary rule would punish the petitioner if he chooses to
19 permissibly appeal the decisions made by the IJ or the BIA.[7] This Hobbesian choice, whereby
20 petitioner must "choose" to stay detained indefinitely if he wishes to appeal an erroneous decision or
21 accede to the IJ's determination and depart his adopted home, violates due process guarantees.

22      The government seems to be making an argument that Singh's detention from March 2007
23 until March 2008 was due to his inadmissibility as the perpetrator of a crime of moral turpitude. The
24 detention since March 2008, they claim, is due to Singh's commission of an aggravated felony. The
25 underlying crime in both instances, however, is the same. The court will not allow the government
26 to claim that the one year of civil confinement that Singh underwent is completely irrelevant.
27 Indeed, the government could have initially claimed that Singh had committed an aggravated felony.
28

United States District Court
For the Northern District of California

9

With respect to due process violations, the government must bear the bulk of the responsibility in order to assure that individual rights are preserved. Indeed,

> the Supreme Court has consistently adhered to the principle that the risk of erroneous deprivation of a fundamental right may not be placed on the individual. Rather, when a fundamental right, such as individual liberty, is at stake, the government must bear the lion's share of the burden. Indeed, those cases in which the Court has found detention schemes to be permissible have emphasized the procedures available to protect the individual's rights.

Tijani, 430 F.3d at 1245 (Tashima, J., concurring).

Finally, the government requests that if petitioner is ordered released, this court's decision be stayed until the government has an opportunity to appeal the decision to the Ninth Circuit. However, since the due process violation is ongoing, the court refuses to sanction further violations while the appeal of this order is pending. Therefore, this request is denied.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED and **petitioner is ordered released forthwith**.

IT IS SO ORDERED.

Dated: May 28, 2008

                                        MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. The felony false imprisonment charge has been subsequently reduced to a misdemeanor.

2. Petitioner argues that allegations contained in this report were not presented to the Immigration Judge, and, in any event, are not admissible when an Immigration Judge considers the modified-categorical approach. Since this court bases its decision upon the length of petitioner's confinement, the court does not reach petitioner's objection and uses the report by way of background only. Furthermore, since the Immigration Judge seems to have decided that oral copulation with a minor is an aggravated felony as a *categorical* matter, the particular circumstances of the underlying crime were irrelevant to his determination. See Coppin Dec., ¶ 2.

3. The court does not find that petitioner here is engaging in delay tactics in order to secure his release because, as discussed above, petitioner has legitimate, non-frivolous grounds upon which to appeal.

4. The parties await a written decision of the IJ which they advise is generally handed down by this time.

5. Petitioner seemingly only has one month of probation remaining to be served.

6. A stronger case for release is made if petitioner can demonstrate a likelihood that the IJ's decision was incorrect. Although district courts lack jurisdiction to determine whether a crime is an aggravated felony, they may nevertheless determine the likelihood that the IJ may be reversed upon appeal. Consequently, district courts can determine whether a crime, e.g., oral copulation with a minor, is likely to be found an aggravated felony based on existing case law and pertinent statutory provisions.

7. Whether petitioner is pursuing an appeal merely to delay his removal may be taken into account when determining whether continued detention will lead to a due process violation.